First case, In Re Semcrude. Counsel, please approach. May I approach, Your Honor? Yes, sir. May it please the Court. Paul Bassett for Appellant Tom Kavisto. The bankruptcy- Say your rebuttal time. I would like to reserve five minutes, Your Honor. Yes, sir. The bankruptcy court below initially ruled that all of plaintiff's claims that were brought in the Oklahoma State Court were derivative and enjoined the plaintiffs from asserting them. On remand, the bankruptcy court changed its mind actually several times and denied the injunctive earlier. This court should reverse the bankruptcy court's final order for the following reasons. Plaintiff's claims, all three of them, are indeed derivative under controlling Oklahoma law, which looks exclusively to plaintiff's alleged injury for that determination. No Oklahoma law says that a special duty- Are we talking about Dobry? Yes, Your Honor. And, in fact, the Oklahoma legislature, which codified Dobry in a statute that applies to Oklahoma Limited Partnerships, which we cited in our briefs. There are actually three cases, Jarvis, Dobry, and- And Johnson. Johnson is Stewart. All three- is it Stewart? Johnson, Your Honor. Johnson. Well, all three seem to help you. They do. But they're a bit ancient. There is a more recent case by the District Court in Oklahoma, which doesn't seem to help you. It does, in fact, say that when a wrong affects the plaintiff directly as an individual, the plaintiff would have standing to bring fraudulent claims. Would Your Honor be talking about Stoner v. Ford? Because Stoner, which we- Stoner is the case. Yes. And Stoner is an interesting case in that it does come out the way it does, but as we put in our brief, it hasn't been cited in the decades since it was decided. These types of cases are not very common in Oklahoma. True. True, Your Honor. The more important distinction, however, is if you read the case, what the court held was the claims, there were four of them, three of them were really pertinent. One was the issuance of watered stock and the second one was secret profits. And the court said, yes, those were derivative because the harm applied collectively to all the shareholders. The fraudulent inducement claim, however, the court said was direct and the fraudulent inducement was the failure to disclose the other two, the watered stock and the secret profits. But if you read what the allegation actually was, the allegations were, because the court did no analysis of the claims. It just said the harm was individual. But the actual allegations that the court was analyzing were, and I quote, it is alleged that in soliciting investments, Ford and Song, the defendants, did not disclose to plaintiff or to any other investor. And it's the same with the other allegations. The allegations applied not only to the defendants but to all the shareholders collectively. So if the Stoner Court had properly looked at and analyzed Dobry and Jarvis and Johnson, it would have come out the other way. So as we said in our brief, it's wrongly decided. Under Oklahoma law, it seems that the courts take a very broad view of the potential sources for fiduciary duty. And when we have the Oklahoma Supreme Court saying in Lawrence, for example, that it won't set any bounds to the facts and circumstances out of which a fiduciary relationship may arise, why under those circumstances wasn't the district court correct to find that here, based just on the allegations and the complaint, that there is some sort of different personal relationship that existed here that makes for a different fiduciary duty and therefore the breach of that as something separate and independent from other investors? Yes, Your Honor. Several points on that. First, our argument is the district court on appeal went awry and beyond Oklahoma law by looking to a special duty. Because there's no Oklahoma law that says a special duty can transform an otherwise derivative claim into a direct claim. That's the first point. Oklahoma law looks exclusively to the plaintiff's alleged injury, not to a duty. The Tooley case, which both sides cited below, talks about how a duty like that could give rise to a separate claim. But the Oklahoma case law and the legislature says, no, we look only to the alleged injury. And, in fact, another case that the plaintiff cited below, PopTech, talked about the split of authority around the country on whether fraudulent inducement can give rise to a direct claim or a derivative claim. And it makes very clear that on the derivative side of the fence, the argument is that if the harm due to losses that apply to all the shareholders collectively, and they can differ in amount but not in kind, which is what we have here, the claim is derivative. Well, I'm not sure that's entirely accurate. What if you invite me to a lunch meeting, me and just two or three other people, and then you proceed to paint with a rosy picture the financial health of the company, essentially misrepresenting the financial health of the company. I believe you, and I fork over several million dollars, relying on those representations. Why isn't that a direct claim? What I want is my money back. I'm not really concerned about the shareholders. I want my money back. Absolutely. The distinguishing factor there, though, in the allegations in the Oklahoma petition, Mr. Covisto allegedly made the exact same representations to all the shareholders, all the unit holders. But not at the same time. It need not be. This is not sort of a reg FD type of public company situation. But isn't that what makes it a direct claim? Covisto was speaking to me, and I relied on those representations. Your Honor, I would say, based on the allegations in the petition, these very same allegations were made, and I will say they allege, in fact, at paragraph 14 of the petition, Covisto made these misrepresentations to plaintiffs during shareholder meetings, informative meetings, other formal and informal meetings, including apparently a coffee at the country club. So you're saying there's no significance to the fact that it was said to me directly at a meeting with myself and two or three other individuals? Exactly, when we are constrained by Oklahoma law. Because he repeated the same representations at shareholder meetings. Yes, and in public filings. That seems to water down the idea of a direct claim. That's right, Your Honor. I would have a direct claim. I think I would have a direct claim if he made false representations to me in a, let's say, a semi-private meeting. But, Your Honor, if your harm is the same harm that the other unit holders or shareholders suffered, that is the diminution or destruction in value of the stock under controlling Oklahoma law, that's the end of the analysis. What if I say my harm is the $30 million I gave you that I would like to get back? But you didn't give it to me, Your Honor, and the same here. The plaintiffs bought units, shares of a company. Where would you buy those units from? Where would you physically, where would one buy those units from? If Judge Fuentes bought it because he was at your lunch, and I just bought it because I read something about Semcrude and I thought it was a good investment at the time, where would I go to get that? Your Honor, the Sem Group offered units for sale in written documents and offers, and so subscribers would subscribe for that stock, and that's exactly what happened here with these plaintiffs. Now, I would just remind the Court I'd like to reserve at least four or five minutes, if possible. So when does a direct claim arise? I mean, there is a distinction, and the distinction was made by the district court, but you seem to suggest that this is not such a case. So when would a direct claim arise? Well, a direct claim can arise in many different situations, Your Honor, but the bottom line is if we're talking about a claim in which a plaintiff bought stock or units in a company and suffered harm across the board with the other shareholders or unit holders, then that's a derivative claim. A direct claim would be more in the situation of the classic investment advisor meeting with someone, soliciting an investment, soliciting funds to invest in some different ventures or something like that. That is not at all what happened here. Mr. Sedgwick, let me ask you another question. Do you need to get a direct claim? Do you need a separate injury or separate losses? I'm not sure I understand the distinction. I guess that would be my second question. Is there any distinction between an injury and losses? The case law talks about an injury or a harm, and losses seem to go in with that. So I would say the distinction, Your Honor, is it's really separate between whether it's an injury or a harm or a loss, between that plaintiff versus the company. And if the harm is across the board and it's not distinguishable between the harm the company suffered, which is the case we have here, right? What's the harm here? What do you say the harm is to the Oklahoma plaintiffs and all the other shareholders? The same group bankruptcy wiped out the equity for all shareholders collectively. Except for whatever share they got out of the $30 million recovery. Correct. But to be honest there, the equity holders were wiped out of the bankruptcy. So that settlement went to the creditors. Isn't the estate closed now? I believe there's a motion pending and it's about to be closed. So no matter where you bought your stock or where you bought your limited partnership units, under what circumstances you bought them, you all lost the same amount? Correct. Which was 100% of your investment. That's right. And, in fact, money in, money out. Because the plaintiffs make an argument, well, we forwent an opportunity to divest, and others took an opportunity to invest more. But it's money in, money out. Everyone suffered the same harm. So under Oklahoma law, that's by definition a derivative claim. But isn't the point here that they're not bringing a claim against the estate? They're not bringing a claim against the company. They're bringing a claim against an individual and alleging an injury, a breach of fiduciary duty by that individual. Why is that not a direct claim based on Oklahoma law saying that there's this very broad kind of fiduciary duty so that the injury and loss, and we've asked you about those terms, but they're alleging that that is, that that breach of fiduciary duty gives rise to a different injury than if they had been bringing a claim against the estate. If I may respond, two points, Your Honor. First, the case law is clear that you look beyond the label of the claim to, under Oklahoma law, the injury. And the injury here is indisputably shared by all the same group shareholders collectively. So that is a derivative claim. Second, it goes to the issue of standing. Because in the case law, you look to some cases show that the plaintiff would bring a claim against a corporation or against individuals. But the analysis is always, do they have standing? Because if it's a derivative claim, an individual does not have standing. Thank you, Mr. Presidio. We'll get you back on your total. Thank you, Your Honor. Mr. Schiffer. Good morning, Justices. My name is Adam Schiffer. I represent the appellees. We believe that the bankruptcy court's order should be affirmed. The confusion here, probably not in the court's mind, but with the briefing, is that we're not making a claim for mismanagement and any losses that came from the mismanagement. That happened in 2008 when Sim Group went into bankruptcy. Our claim arises much earlier in time. Damages are measured as of the day of the breach. And for us, that rewinds the clock to 2006. Our claim is for misrepresentation, and not just to everybody, as Mr. Beset just said. It was to us. And we were the only non-insiders that owned the units in Sim Group. We were the ones on the outside looking in. And this meeting was with us to encourage us to not sell the units we had because there was an offer on the table to buy those units for $30 a unit, which was a very good offer at the time, from an investment bank. Could you talk? Yes. The thing that I'm interested in is the legal support for your proposition. And it doesn't look like you have very much support under Oklahoma law. I respectfully disagree. I respectfully disagree. And let me start with Daubry. Daubry, in that case, did look at the claim that was made for losses and found that because the plaintiff was seeking dividends and the value of the stock, that that was a derivative claim. True enough. But it didn't say, this is the test, this is the only test, like Tooley did. Tooley said, here's the test, and these are the factors, and that's all we're going to look at. The court in Daubry made no such statements. So I disagree that Oklahoma. How does Tooley help you? Well, if you look at the injury, our injury is different from all the other shareholders. And let me, if I may. Doesn't that go to the question I ask opposing counsel, is there a difference between injury and loss? I think there is. And I think that in our case, we were induced to make capital contributions. Our loss of capital contributions, which is what we're seeking to recover, less whatever value what we had, was really, that was the loss. It helped the company. The company got more money in its coffers. Is your loss any different from what the other shareholders lost? Yes, because our claim is for our loss of contributions. We're not seeking the value of the company in 2008. Remember, our damages are measured at the time of our loss, which is 2006. In 2006, no one had lost anything. There wasn't a bankruptcy. The company was still active. Isn't every investor at this point seeking 100 percent recovery on their investment? How is the loss that you allege on the face of the complaint? Can you point us to what allegations in the complaint describe some injury that is different in kind, not just in amount, but in kind from the remainder of the investors? I'd ask my colleague to do it. The book is there, and we'll dig it out. But we obviously, when we pleaded, we pleaded generally, which we're allowed to do under Oklahoma law. We didn't specify exactly the types of damages that we're seeking, but clearly we're seeking the return of our capital contributions less whatever value we actually got measured at that time. To get back to your question about Oklahoma law, though, I'd like to tell you more on why I believe Oklahoma law actually supports us. You look at the court in Jarvis. Jarvis was a case. This was a 1917 Oklahoma Supreme Court case. Jarvis was a case where the company brought a claim, and because the promoter had basically contributed assets to the company that were overinflated, he made a secret profit on the deal. And the court said the company had standing to bring that claim. It was not a case where an individual shareholder brought a claim. Jarvis doesn't really help you. It doesn't hurt you either. It doesn't help or hurt. Right. The appellants say it hurts us, but it doesn't help or hurt. Johnson actually helps us, and here's how. Johnson was a case where the court found that a direct claim was appropriate because the shareholder who was defrauded actually gave money directly to the defendant, not to the company. So that doesn't apply to our situation either. But they cite a case from Missouri, a 1901 case out of Missouri called the Hess case, and they cite it with approval and they quote from it. Well, I've gone back and read that case, and that case is very much like our case. In that situation, you had some lawyers that formed a title company, in essence, and they contributed books that were supposed to have a complete listing of abstracts in the county, and they sold shares and they defrauded the plaintiff, claiming that the books were better than they really were. And the plaintiff brought a direct action against them. They pled and argued that it was derivative, and the court said no, that the plaintiff had standing because of the fraud to bring the direct action. That's our case here. So I would argue that Jarvis is neutral, doesn't help us, doesn't hurt us. Johnson, if you look at the case, it cites with approval, actually helps us. And then Stoner is on all fours. And that's pretty much everything that's out of Oklahoma. So if we're trying to read the tea leaves, Your Honors, I believe that Oklahoma law, number one, does not set forth this exclusive test that appellants say it does. It's not exclusive at all. It's a 1956 case that just addressed, you know, basically basic law. And then the other case is, if read carefully, actually support our position. None of these cases stands against us. And the Poptek case. Just to follow your theory that you do have a direct claim because statements were made to your clients directly, individually, in short meetings. However, your adversary, Mr. Bessette, says, but the same statements were made to all shareholders at different times. So how could it be a direct claim? Well, that's not in our pleadings. I mean, I think right now we're at the pleading stage, and it's hard to know what discovery is going to show. But I would find that surprising, since we're sort of going off the pleadings right now. So you're, Mr. Bessette, speaking off the record then? Well, yeah. I think the court should look at our pleadings and make a determination based on our pleadings. But in terms of the same statements were made to everybody else, the other people were insiders. That is the essence of your case, isn't it? Yeah, they were insiders. We were outsiders. And he made direct statements to us to make sure that we did not miss this opportunity to put more money into the company and not to sell our units. And in reliance on that, my clients had known him for years. They trusted him. We made those allegations. We believe under Oklahoma law there's an appropriate fiduciary duty. What's wrong with trying to get a little bit more money for the company? Nothing's wrong as long as you're truthful. Where was the deception? The deception was at the time that he was telling us that things are going great, we're going to be doing some things that, you know, I can't give you the details, but our stock's going to increase a lot over the next couple of years. He was actually gambling away the company's money doing speculative trades on margin. That led to a diminution in value for all investors, right? If our claim were for the loss of the value of our units, then, yes, you're right. But that's not our claim. Our claim is that at the time of the misrepresentation, when we contributed our capital, what we got wasn't worth what we paid because of the misrepresentations. It's like the abstract company in Hess. Is it misrepresentation or omissions? Both. How is that any different than anybody else who bought a limited partnership unit at that time? If they were outsiders and they had a duty, and if Mr. Covisto had an individual duty to them under Oklahoma law, it would be. But these were insiders. You really want to make a distinction between outsiders, which you say you are, and we'll accept that, and insiders, but there's no indication that the, quote, other insiders were involved in this misrepresentation with Covisto. Is there? Well, it's not addressing the pleadings at all. No one's pleading. I mean, now we're sort of launching forward and trying to figure out what discovery is going to show. You're sort of alleging that. You're saying there's a difference between purchasers. Well, we just know our position. Our position was what we, yeah, we can't, I'm not going to stand here before the court and make representations as to others. But you can. I've said all I know. I know. Okay. Whether they're outsiders or insiders may be a different relationship, and I understand you've argued that gives rise to a different fiduciary duty, but if what we're looking at is the injury as in the economic harm, how is what you just said is the injury, that is, it's lost value as a result of misrepresentations or omissions that you didn't know about at the time? Why isn't that true with every investor? I can't speak to every investor, but what I can say is if an investor is seeking to recover damages because of the bankruptcy, because Mr. Kavisto's mismanagement and self-dealing wiped out the company, then if we were seeking that, we wouldn't be any different from anybody else. But they're seeking to recover because their investment lost its value. No, we're seeking to recover because misrepresentations were made to us that induced us to give over more money than what we got at the time. And because, following up with Judge Krause's question, and because you lost your money. You lost what you invested. Respectfully, that's not the measure of damages. Damages are going to be measured at the time of the breach. What happened in 2008 is actually irrelevant, legally irrelevant to our measure of damages. The company could have gone skyrocket high. Now, we probably wouldn't have brought the claim. Maybe you can explain it again. Why isn't the deception that you complain about the same deception that all the shareholders complain about, and that the litigation trust knew about? Well, that was hard fought because, as I understand it, the defense was that everybody within the company knew about the speculative trades that Mr. Kavisto was making. They knew he was gambling away the corporate funds. Yeah, he was. We didn't know it, but they knew it. But that's the deception you're complaining about. And that's the same deception that all of the shareholders suffered. But if I have a duty to you, and I'm doing something improper, and I don't come clean to you. If I defraud you, and the money you give actually helps the company. Now, the test is, was the company harmed? Well, in this case, when they got our capital contributions, the company wasn't harmed. It was helped. So, this is not a harm that was suffered equally by everybody. And in the case law, most of the cases that I've read around the country that deal with this issue. Just stay with that. Okay, sorry. The same with somebody else who bought a unit that hadn't been at those lunches. The company was helped by their purchases of units. Well, they would have to have an individual. Mr. Kavisto would have to owe them an individual duty, not just by virtue of his position as an officer. They would have to have, he would have had to have breached that duty to them individually, and they would have to suffer a harm. I believe the test is, not also suffered by the company. And that's the question I was getting at. Is there a difference between injury and loss when you talk about harm? Because it seems to me that everybody who was in this SEMCRUD investment all lost the same thing. They lost what they put in. And the basis of everybody's loss was, in fact, what they put in. The fact that there was a chance it was going to double or triple and it never doubled or tripled. If there were resources, you weren't going to be able to collect that. All you were going to be able to collect is what you put in. And that's what you're claiming, what you put in. Well, right? No. Sorry. How is that not what you're claiming? I realize this is a lot like very academic exercise. And you can slice it thin or you can slice it thick. The appellants want to slice it thick. They just want to throw it all in the mix and say, oh, it's all rising out of mismanagement. And there are some cases that support that view. Other cases slice it thinly. And they say, look, we look at the duty that was breached, the nature of that duty. We look at the harm. And we also then look, was that particular harm, in this case the loss of our capital contributions, a harm suffered by the company, also suffered by the company? Well, no, it wasn't. Because if I'm making capital contributions, I'm helping the company. It helps the company. It doesn't hurt the company. Now, what happens two years later, okay, if we were making a claim for the complete loss of value of our investment, then that would be a derivative claim. But we're seeking our damages that are going to be measured at the time of the breach, which is when we made the capital contributions. That's a different exercise. If we adopt your theory, can all of the assembly group partners bring individual actions? I think it would depend on, again, whether or not the duty was, whether it was breached, and what the losses are. Mr. Schiffer, what you've actually alleged in Paragraph 46 of your complaint asserts that there were misrepresentations that were made to the plaintiffs here during shareholder meetings, informative unit holder meetings, and other meetings. How is that different in representation that were made to any investor? Well, there's another allegation. Well, you're right. That wouldn't be special. But what we've also pleaded is that there was a meeting, and this is really the key to our case. At the Southern Hills Country Club in March or April of 2006, as in Paragraph 48 of our complaint, we talk about, and this is the seminal meeting, because there was an offer on the table to buy out all our units from Thane Ritchie. And so we were faced with a choice. We could cash out and make a very nice profit on what we'd invested thus far, or we could, in essence, double down. And Mr. Covisto made a personal appeal to us at that Country Club meeting and said, don't sell, basically double down. And we did that. So are we going to have a different rule for direct actions that circumvent bankruptcy settlements where there's been some personal communication between an executive and investors as opposed to written communication or communication through analysts or telephone calls? How is that a workable rule? Well, I think that it's workable in that you've got, if someone commits fraud or breaches a fiduciary duty, it really wouldn't be fair for them to hide behind a bankruptcy estate and say, you know, I'm not personally, in essence, I'm not personally liable for anything. And that's not the law. I mean, the law in every state is that a tortfeasor is individually liable for his misconduct. And so to argue that there's no direct claim if our damages in any way touches on the value of the company, right? And I can't argue that our damages don't in any way touch on the value of the company. They do touch on it. But it's not the centerpiece of the damage claim. So to adopt the rule that appellants want to adopt, then tortfeasors can really tort away as much as they want. When you've got a bankruptcy situation, they're fully protected. They get out of jail free card. Thank you, Mr. Shaffer. Just one other question, if I could, to follow up on your example, which was a good one, on distinguishing the loss, your loss versus a corporation's loss. But once you put that money in, whatever that money was, 100 million, 10 million, once you put that money in, that was corporation money, right? Well, good question. Okay. It got to the corporation. It did. It got to the corporation. It did. You got equity. You got equity by your investment. It got to the corporation. Right. And the corporation lost that as well as it lost the other unit money that was part of the entity. I, again, respectfully disagree to this extent. This case is somewhat like the Johnson case in that Mr. Covisto was actually taking company money, and it's almost like he went to Las Vegas and was gambling it for his own account. So when we gave the company our millions of dollars, I don't know, as I sit here today, whether that money actually went to the company ultimately or not or whether Mr. Covisto used it for his own account. And the problem here, the company failed because Mr. Covisto owed Sem Group $300 million. Likewise, you don't know that, and you didn't plead that. Right. So we have to assume it went to the corporation. Yes, sir. All right. Okay. You answered my question. Thank you. Thank you very much. Mr. Bissett? Yes, sir. When you get a chance, could you explain what delta, delta neutral, is that part of this case? It's not really part of the case, Your Honor. It is a terminology. Mr. Covisto used it and said we're delta. Correct. It's part of the hedging and trading strategy that he used. Does it mean we're okay, we're fine, we're balanced? What does it mean? What it means is there are open and closed positions. There are trades that are put on the book for future transactions, and they have to be delta neutral, which means they have to balance. So puts and calls have to equate to a delta neutral position. What I'd like to say right off the bat is this case is exactly like Jarvis, the original Oklahoma case, which was a fraudulent inducement case. And Judge Fischer, your question went to the heart of Jarvis and to the heart of Plaintiff's case, which is Jarvis, in there there was a fraudulent scheme in which the defendants made representations and induced investors to put money into a corporation and induced the corporation to overspend on an oil and gas lease. That money went into the corporation. And the Supreme Court of Oklahoma said the harm was to the corporation. The incidental harm was to the plaintiffs, but it was a derivative case because it focused on the harm. And there was no harm that was separate and independent from the harm that the company suffered. It was only in amount, not in kind. And Johnson is actually, Johnson reaffirmed Jarvis on that point, that a fraudulent inducement would be a corporation claim, a derivative claim. However, the distinguishing factor in Johnson was the money never went to the corporation. There was a contract between the plaintiffs and the defendants, and the money went individually that way. It never went through the corporation. So there was no derivative claim to be brought. What about Mr. Schiffer's suggestion to us that approaching this case that way would absolve tortfeasors, would absolve those who were engaged in frauds and let them just have a pass on making personal misrepresentations to investors? And I would have two points to that, Your Honor. One, Mr. Covisto is not hiding behind anything. He suffered a judgment and paid money and had lawsuits and so forth. So there's nobody getting off on anything. But second, on the issue of fairness, the whole point of bankruptcy rules and a very strict direct derivative type analysis is to treat all shareholders equally. Because if we were to find a direct claim here because someone had coffee or lunch and heard the same representations that other shareholders heard maybe publicly in a more formal setting, then you're putting some shareholders above others. And where's the fairness there? So the rules are to treat all shareholders equally. If there's a derivative claim, it's to be brought by the corporation for its behalf. There are no direct claims. If there are direct claims, then someone would have them. And our point here is that because of controlling Oklahoma laws, focus on the harm and the injury. The plaintiff himself said if his harm touches on the harm that was suffered by some group, it is under Oklahoma law a derivative claim. And that's our point. How long had this bankruptcy case been in the courts before the plaintiffs filed this direct claim? At least two years. Yeah, it was two years. And they filed their claim in Oklahoma state courts. I mean, were they sent the notice that this case is pending, it's in court, and so forth, and you have a right to assert a claim? Absolutely. All of that was done in the Delaware Bankruptcy Court with all the notice to shareholders and everyone. And it's telling, I think, that the case was brought in Oklahoma state court exactly one month after the final order, confirmation of the plan by the bankruptcy court. And they never chose to participate any earlier. You had argued below that Tooley applied. Your brief on Peel relies almost exclusively on Daubry. Are you retreating from Tooley? As we address this case, should we be taking account of Tooley as some kind of different test than Daubry? Good question, Your Honor, and I wanted to get to that. We cited Tooley below because it can be read consistently with Daubry, which is on the harm, separate harm. Tooley did away with the test of a separate injury, separate harm for the direct derivative, but it kept the concept. So it made the test a two-part question of who suffered the harm and to whom the relief would go. But the Tooley court made clear that the injury must be independent of any alleged injury to the corporation for there to be a derivative claim. It just made that sort of ancillary. You answered the two-part question, but the injury has to be independent, and that's consistent with Daubry. So we are reading Tooley that way. What Tooley cannot do is change Oklahoma law to insert a special duty to transform what is a derivative case to a direct one. Mr. Bissett, thank you very much. Thank you. Thanks, counsel, for your important insights into this case. We'll take the case under advisory. Thank you.